<u>NOT FOR PUBLICATION</u>

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>        Plaintiff,<br><br>v.<br><br>GEMAL SHEIKA,<br><br>        Defendant. | Crim. No. 05-67 (WGB)<br><br><u>MEMORANDUM OPINION &<br>ORDER</u> |

APPEARANCES:

Christopher J. Christie, Esq.
United States Attorney
    by: Judith H. Germano, Esq.
    Assistant United States Attorney
970 Broad Street
Newark, New Jersey 07102

    Attorney for the United States

Hamdi M. Rifai, Esq.
Rifai & Associates P.C.
1035 Route 46, Suite 101
Clifton, NJ 07013

    Attorney for Defendant

**BASSLER, SENIOR DISTRICT JUDGE**:

    Defendant Gemal Sheika ("Defendant" or "Sheika") moves to suppress certain statements that he made to FBI agents concerning allegedly fraudulent credit card transactions, on the basis that the FBI agents failed to inform him of his <u>Miranda</u> rights.  For the reasons set forth below, Defendant's motion to suppress is **<u>denied</u>**.  In addition, the United States' motion for reciprocal discovery is **<u>granted</u>**.

**I.   Background**

At 6:30 a.m. on September 29, 2004, two FBI agents arrived at Defendant's home in Garfield, New Jersey.  Defendant permitted the FBI agents to accompany him into his living room, where they questioned him for approximately thirty minutes.  The FBI agents were interested in several credit card charges that were made using a credit card machine operated by Sheika Crystal, a company owned by Defendant's wife.  According to his Certification filed in support of this motion, Defendant was "reluctant to answer" the agents' questions, but nevertheless did so out of "fear of [his] wife being placed under arrest." (Def. 5/10/04 Certif. ¶5.)

According to the FBI report memorializing the interview, Defendant told the FBI agents that he owned and operated Sheika Crystal, but that he used his wife's name in connection with the business because of his poor credit.  Defendant went on to state that he and Ahmed Souda ("Souda"), the owner of a taxi and limousine service, had used the credit card transactions as a way for Souda to repay Defendant an $80,000.00 debt.  It seems that on multiple occasions, Souda gave Defendant credit cards which Defendant then charged using the Sheika Crystal credit card machine.  When the issuing bank paid Sheika Crystal, Defendant kept the money as payment for Souda's debt.  By his own account, Defendant also told the FBI agents that he "thought everything was fine" with the credit card transactions because he had

Souda's authorization.  At the conclusion of the interview, the agents served Defendant with a federal grand jury subpoena.  It is undisputed that the FBI agents did not give Defendant a <u>Miranda</u> warning at any time during the interview.

Pursuant to the subpoena, Defendant appeared at FBI offices in Newark, New Jersey on October 15, 2004, for fingerprinting and photographs.  It was not until December 22, 2004, however, two months after Defendant was interviewed by the FBI at his home, that the United States filed a complaint against Defendant in federal district court.  On January 17, 2005, three months after he was questioned by the FBI at his home, local police in Clifton, New Jersey arrested the Defendant after he was stopped for a routine traffic violation and the police learned that there was a federal warrant for his arrest.

On January 25, 2005, a federal grand jury returned an Indictment against Defendant, charging him with conspiracy to commit credit card fraud.  The Superseding Indictment, returned on March 22, 2005, charges Defendant with three counts: (1) conspiracy to commit credit card fraud and mail fraud in violation of 18 U.S.C. § 371; (2) credit card fraud in violation of 18 U.S.C. 1029(a)(2); and (3) mail fraud in violation of 18 U.S.C. § 1341.  Trial is scheduled to begin on July 6, 2005.

Defendant now argues that the statements that he made to FBI agents on September 29, 2004 should be suppressed at trial

because the agents failed to inform him of his rights under Miranda v. Arizona, 384 U.S. 436 (1966).

## II. Analysis

### A. Motion to Suppress

Miranda warnings are not required unless law enforcement agents interrogate a person who is in custody. See Miranda v. Arizona, 384 U.S. at 444. To determine whether an individual was in custody, a court must, after examining all of the circumstances surrounding the interrogation, decide whether there was "a formal arrest or restraint on freedom of movement of the degree associated with a formal arrest." Stansbury v. California, 511 U.S. 318, 322 (1977) (per curiam) (internal quotation marks omitted). The inquiry focuses on the objective circumstances of the interrogation, not the subjective views of the officers or the individual being questioned. Id. Where, as here, the individual was not under arrest at the time the statements were made, "something must be said or done by the authorities, either in their manner of approach or in the tone or extent of their questioning, which indicates that they would not have heeded a request to depart or to allow the suspect to do so." United States v. Leese, 176 F.3d 740, 743 (3d Cir. 1999) (internal quotation marks omitted).

With these principles in mind, the Court finds that there is no indication that the FBI's September 29, 2004 interview of

4

Defendant constituted a custodial interrogation. Rather, the interview had all of the indicia of voluntariness.

Defendant permitted the agents to enter his home. Defendant was questioned in his own living room. The questioning lasted no more than thirty minutes. Defendant asserted his innocence. Indeed, nothing suggests that the agents would not have left Defendant's house had Defendant requested that they do so, or that Defendant's ability to otherwise stop the questioning was restricted in any way.

In reaching this conclusion, the Court does not question Defendant's claim that he was truly "frightened" during the interview. Nor does the Court doubt that Defendant was "reluctant to answer" the agents' questions. (Def. 5/10/05 Certif. ¶ 5.) Those arguments are nevertheless insufficient to establish a Miranda violation. As the Supreme Court explained in Oregon v. Mathiason,

> [a]ny interview of one suspected of a crime by a police officer will have coercive aspects to it, simply by virtue of the fact that a police officer is a part of a law enforcement system which may ultimately cause the suspect to be charged with a crime. But police officers are not required to administer Miranda warnings to everyone whom they question.

429 U.S. 492, 495 (1977). In other words, "a noncustodial situation is not converted to one in which Miranda applies simply because...the questioning took place in a 'coercive

environment.'"  Id.  Defendant's motion to suppress is accordingly denied.

**B.   Suppression Hearing**

In his moving papers, Defendant does not expressly request that the Court hold a suppression hearing.[1]  The Court nevertheless concludes that a suppression hearing is not warranted in this case.

A defendant is entitled to a hearing on pretrial motions only when his moving papers present a "colorable claim" for relief.  United States v. Brink, 39 F.3d 419, 1067 (3d Cir. 1994).  In order to be "colorable," a defendant's motion must consist of more than mere allegations of misconduct.  United States v. Voight, 89 F.3d 1050, 1067 (3d Cir. 1996); United States v. Blackwell, 954 F.Supp. 944, 964 (D.N.J. 1997).  There must be issues of fact material to the resolution of the defendant's claim.  Id.  As discussed above, Defendant has made no such showing with respect to his allegations of a Miranda

---

[1] In reply to the United States' brief in opposition to the motion to suppress, Defendant submitted a supplemental Certification stating that: "[t]he government states that I went to 'freshen up' upon the FBI's arrival.  This is not true.  Since it was 6:30 a.m. I went to my kitchen to make a pot of coffee.  My living room is next to my kitchen, it is a very small space.  In other words, I was never out of sight."  (Def. 5/30/05 Certif. ¶ 3.)  In the accompanying letter, Defendant argues, without further explanation, that "[i]t is clear that there are facts in dispute.  I believe that a hearing should be held for the court to make a factual finding."  (5/30/05 Letter from Defendant to the Court.)

violation.

### III. United States' Motion for Reciprocal Discovery

On February 16, 2005, the Court issued an Order for Discovery and Inspection which, among other things, provides that "[t]he defendant shall have ten (10) days from its receipt of discovery from the United States to produce its reciprocal discovery." The United States claims, and Defendant does not dispute, that the government began providing Defendant with discovery materials on February 24, 2005, but that the Defendant has thus far failed to reciprocate. The Court therefore grants the United States' motion for reciprocal discovery pursuant to Fed. R. Civ. P. 16(b).

### IV. Conclusion

For the reasons set forth in this Opinion, Defendant's motion to suppress the statements he made to FBI agents on September 29, 2004 is **denied**. In addition, Defendant is ordered to provide the government with reciprocal discovery on or before June 16, 2005.

**SO ORDERED.**

_____
/s/WILLIAM G. BASSLER
William G. Bassler
United States Senior District Judge

Dated: June 9, 2005