NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>      Plaintiff,<br><br>v.<br><br>GEMAL SHEIKA,<br><br>      Defendant. | Crim. No. 05-67 (WGB)<br><br>M E M O R A N D U M<br>O P I N I O N |

**APPEARANCES:**

CHRISTOPHER J. CHRISTIE
United States Attorney
By:  Kevin Walsh, AUSA
970 Broad Street
Newark, New Jersey  07102

    Attorneys for United States

HAMDI RIFAI
1035 Route 46, East, Suite 101
Notch View Office Plaza
Clifton, New Jersey 07013

    Attorney for Defendant

**BASSLER, SENIOR DISTRICT JUDGE:**

    On August 4, 2005, a unanimous jury found Defendant Gemal Sheika ("the Defendant" or "Sheika") guilty of one count of conspiracy to commit credit card fraud and mail fraud, one count of credit card fraud, and one count of mail fraud.

    Sheika now moves for a judgment of acquittal pursuant to

1

Fed. R. Crim. P. 29(c) or a new trial pursuant to Fed. R. Crim. P. 33. Each of the Defendant's seven contentions lacks merit and is unsubstantiated by the record and legal precedent.

For the reasons set forth below, the Court **denies** the Defendant's motions.

## Discussion

### I.   Rule 29 Motion

A defendant may move for entry of a judgment of acquittal if "the evidence is insufficient to sustain a conviction." Fed. R. Crim. P. 29(a).

In reviewing the sufficiency of the evidence supporting a jury's guilty verdict, the Court must view the evidence "in the light most favorable to the government and must sustain a jury's verdict if a reasonable jury believing the government's evidence could find beyond a reasonable doubt that the government proved all the elements of the offenses." United States v. Tyler, 281 F.3d 84, 99 (3d Cir. 2002)(quoting United States v. Rosario, 118 F.3d 160, 163 (3d Cir. 1997)) (internal quotation marks omitted).

The Court must presume that the jury properly evaluated the credibility of witnesses, properly found the facts, and drew justifiable inferences from the evidence. United States v. Menon, 24 F.3d 550, 564 (3d Cir. 1994); United States v. Coleman, 811 F.2d 804, 807 (3d Cir. 1987).

In particular, a court's reversal of a conviction on the

grounds of insufficient evidence must be "confined to cases where the prosecution's failure is clear." United States v. Leon, 739 F.2d 885, 891 (3d Cir. 1984) (quoting Burks v. United States, 437 U.S. 1, 17 (1978)) (internal quotation marks omitted). "[T]he evidence does not need to be inconsistent with every conclusion save that of guilt if it does establish a case from which the jury can find the defendant guilty beyond a reasonable doubt." Id. (citing United States v. Allard, 240 F.2d 840, 841 (3d Cir. 1957)) (internal quotation marks omitted).

It is not the job of this Court, in evaluating a Rule 29 motion, to weigh the evidence or make determinations regarding credibility. United States v. Giampa, 758 F.2d 928, 934-935 (3d Cir. 1985). The Court, therefore, may overturn a jury verdict in rare instances and only if the defendant meets the heavy burden of showing that "no reasonable juror could accept the evidence as sufficient to support the conclusion of the defendant's guilt beyond a reasonable doubt." Coleman, 881 F.2d at 807 (internal quotation marks and citations omitted); accord Menon, 24 F.3d at 564; United States v. McNeill, 887 F.2d 448, 450 (3d Cir. 1989).

**A. Sufficiency Of The Evidence Against Sheika**

The Defendant challenges Count One (conspiracy) and Count Three (mail fraud) with regard to the sufficiency of the evidence

3

presented.[1]  First, he argues "the jury could not have reasonable [sic] concluded that one conspiracy existed within the meaning of the law."  (Gemal Sheika's Br. at 2.)  Secondly, he challenges his conviction for mail fraud because "all of the evidence presented supports a reasonable belief that no mail would be used to apply for the credit card machine."  (Gemal Sheika's Br. at 6.)

The Court must presume that the jury properly evaluated the credibility of witnesses, properly found the facts, and drew justifiable inferences from the evidence.  United States v. Menon, 24 F.3d 550, 564 (3d Cir. 1994); United States v. Coleman, 811 F.2d 804, 807 (3d Cir. 1987).  It is not the job of this Court to weigh the evidence.  United States v. Giampa, 758 F.2d 928, 934-935 (3d Cir. 1985).

The Court finds that the Government presented sufficient evidence to "establish a case from which the jury can find the defendant guilty beyond a reasonable doubt."  United States v. Leon, 739 F.2d 885, 891 (3d Cir. 1984) (citing United States v. Allard, 240 F.2d 840, 841 (3d Cir. 1957)) (internal quotation marks omitted).

---

[1]Although the Defendant's argument entitled "Issue V" requests "A Reversal Of The Jury's Decision," the Court finds that the argument, or lack thereof, goes more to "the interests of justice" standard under Rule 33 than the "sufficiency of the evidence" standard under Rule 29; therefore, the Court finds this issue is more appropriately analyzed under Rule 33, infra.

**1. Count One: Section 371 Conspiracy To Commit Credit Card Fraud And Mail Fraud**[2]

Count One of the Superseding Indictment charges the Defendant with conspiracy to commit credit card fraud and mail fraud.  The Defendant argues that the government presented evidence of two conspiracies rather than one. Furthermore, he claims that issue was never presented to the jury and, therefore, the jury could not have reasonably concluded that only one conspiracy existed.

Where evidence at trial proves facts different than those alleged in the indictment, an impermissible variance may exist. United States v. Perez, 280 F.3d 318, 346-47 (3d Cir. 2002) citing United States v. Smith, 789 F.2d 196, 200 (3d Cir. 1986). For example, when a single conspiracy is charged in the indictment and the evidence at trial proves only the existence of multiple, unrelated conspiracies, there is a variance. See Kotteakos v. United States, 328 U.S. 750 (1946); United States v. Kelly, 892 F.2d 255, 258 (3d Cir. 1989); United States v. Boyd, 595 F.2d 120, 123 (3d Cir. 1978).  "A single conspiracy [however] can involve one pivotal figure who directs illegal activities while various combinations of other defendants further those activities in different ways at different times.  A single conspiracy finding does not require every member to participate

---

[2]This issue is also analyzed under Rule 33, infra.

in every transaction." <u>United States v. Padilla</u>, 982 F.2d 110, 115 (3d Cir. 1992) <u>citing</u> <u>United States v. De Varona</u>, 872 F.2d 114, 119 (5th Cir. 1989).

"In order for us to sustain a defendant's conviction for conspiracy, the government must have put forth evidence tending to prove that defendant entered into an agreement and knew that the agreement had the specific unlawful purpose charged in the indictment." <u>United States v. Idowu</u>, 157 F.3d 265, 268 (3d Cir. 1998).

The Court disagrees with the Defendant's contentions.  The Court finds that enough evidence was presented for a reasonable jury to determine the existence of a single conspiracy.  The Government presented a significant amount of evidence that indicated Khaled Nijem was the central figure in the conspiracy.  The government presented evidence that Nijem was the go-between from the merchants to the credit card holders and that he controlled the distribution of illicit funds.  Ahmad Souda testified that he and Sheika met with Nijem to devise a plan for credit card fraud.  (Trial Transcript (hereinafter "Tr.") of 07-29-05 at 12-13, 18, 21.)  He also testified as to the amounts each person would receive.  (<u>Id</u>. at 18.)  The testimony of Issam Matar and other witnesses further substantiated the evidence that the Defendant was aware of an agreement to commit mail and credit card fraud, that he joined in that agreement, and that he

6

actively participated in achieving the agreement's purpose. (Tr. 08-01-05 at 92, 99, 105.)

The testimony and evidence presented by the government was sufficient for a reasonable jury to find beyond a reasonable doubt that Sheika conspired to commit credit card fraud and mail fraud.

**2. Count Three: Mail Fraud**

Count Three of the Superseding Indictment charges the Defendant with mail fraud, in violation of 18 U.S.C. § 1341. The elements of mail-fraud are: (1) a scheme to defraud; (2) use of the mails to further that scheme; and (3) fraudulent intent. See United States v. Sturm, 671 F.2d 749, 751 (3d Cir. 1982). "Where one does an act with knowledge that the use of the mails will follow in the ordinary course of business, or where such use can reasonably be foreseen, even though not actually intended, then he 'causes' the mails to be used. Pereira v. United States, 347 U.S. 1, 8 (1954); United States v. Tiller, 302 F.3d 98, 101 (3d Cir. 2002). Furthermore, to constitute mail fraud, it is not necessary to show that a defendant actually mailed the document himself, so long as he knowingly takes actions that will cause the mail to be used as part of his illegal scheme. United States v. Cohen, 171 F.3d 796, 800 (3d Cir. 1999).

The Defendant argues that he had no reason to believe that the application for a credit-card swiping machine would be mailed

or that any other part of the scheme would cause the mails to be used.  The Government argues that page 4 of the Merchant Processing Agreement between NOVA Information Systems, the company which sent the Defendant his credit card machine, and the Defendant, which Sheika signed in the presence of Philip Tom, clearly states, that any notices will be addressed to NOVA's Knoxville, Tennessee, offices.  (Gov't Br. at 12 Ex. A; Gov't Exhibit 101-A1.)  The Defendant responds that the Agreement does not necessarily indicate that the mail would be used in processing the Agreement.  Philip Tom, an employee for NOVA, testified that he met with the Defendant and subsequently sent his application via U.P.S. to Knoxville, Tennessee.  (Tr. 07-26-05 at 209, ¶ 19.)  The purpose of acquiring the machine was to fraudulently credit charge-cards and set up a way for the Defendant and his co-conspirators to be reimbursed.

The element of "use of the mail" requires some evidence that the type of document at issue in the case was sent through the U.S. mail.  <u>Cohen</u>, 171 F.3d at 800.  It does not require that the Defendant actually place the document in the mail.  <u>Id</u>.  Furthermore, it is not necessary that a conspiracy contemplate the use of the mails as an essential element.  <u>Pereira</u>, 347 U.S. at 8 (1954).  The testimony and evidence presented by the Government was more than sufficient for a reasonable jury to have found beyond a reasonable doubt that Sheika had knowledge or

8

reasonably foresaw the use of the mails during the course of the conspiracy.

**II. Rule 33 Motion**

Pursuant to Rule 33, the trial court may, in the interest of justice, vacate the judgment and grant a new trial. "A district court can order a new trial on the ground that the jury's verdict is contrary to the weight of the evidence only if it believes that there is a serious danger that a miscarriage of justice has occurred--that is, that an innocent person has been convicted." United States v. Brennan, 326 F.3d 176, 189 (3d Cir.), cert. denied 124 S. Ct. 248 (2003) (internal quotation marks and citations omitted). "Thus, 'motions for a new trial based on the weight of the evidence are not favored.'" Id. (quoting Virgin Islands v. Derricks, 810 F.2d 50, 55 (3d Cir. 1987). In determining whether an innocent person has been convicted, a district court "does not view the evidence favorably to the Government, but instead exercises its own judgment in assessing the Government's case." Id.

**A. Evidence Of Two Conspiracies**

The Defendant argues a new trial is justified on the ground that the evidence of two conspiracies, rather than one, prejudiced him. (Sheika's Br. at 4.) This argument dovetails the issue of the sufficiency of the conspiracy charge analyzed supra. The Defendant argues that co-conspirator Issam Matar did

9

not know Sheika and never met with him.  Sheika claims Mr. Matar's testimony provides evidence of the existence of two conspiracies.  In their response, the Government argues, among other things that this issue was raised in a letter memorandum on August 1, 2005, to which the Defendant never responded and, therefore, the Defendant waived this argument.  (Gov't Br. at 10 n.3.)

The Court denies the Defendant's Rule 33 motion.  As noted above, "a finding of a master conspiracy with sub-schemes does not constitute a finding of multiple, unrelated conspiracies and, therefore, would not create an impermissible variance."  United States v. Smith, 789 F.2d 196, 200 (3d Cir. 1986); United States v. Jones, 2005 U.S. App. LEXIS 5090, *8 (3d Cir. March 29, 2005); United States v. Kelly, 892 F.2d 255, 258 (1989).  To determine whether acts amount to a single conspiracy or multiple conspiracies, a court may consider whether there was a common goal among the conspirators, as well as the nature of the scheme and the extent to which the participants overlap in the various dealings.  Kelly, 892 F.2d at 259.  "The Government need not show that the defendant participated in every transaction or even that he knew the identities of his alleged conspirators or the precise role which they played."  United States v. Kates, 508 F.2d 308, 310 (3d Cir. 1975).

The fact that a Issam Matar never personally met with the

Defendant does not, in and of itself, prove the existence of multiple conspiracies. It is enough that the Defendant knew there were other members of the conspiracy and that he relied on them for his ill-gotten profits; the evidence clearly provides this much. Issam Matar was an essential player in the conspiracy because he provided credit cards for the Defendant to fraudulently charge.

The Court has carefully considered the issue of whether prejudicial evidence as to two conspiracies was presented and finds no merit in the Defendant's contentions.

### B. A Juror Fell Asleep

The Defendant also argues that a new trial is required because "the defense was prejudiced by juror number two because of the timing of his sleep patterns indicates that he was not willing to consider the defense presentation." (Sheika's Br. at 8.) The Defendant provides no legal support for this argument.

Sleeping is a form of jury misconduct, and a defendant must demonstrate both that the juror in question ignored an essential portion of the trial and that the defendant was prejudiced by the juror's misconduct. United States v. Ortiz, 1993 U.S. Dist. LEXIS 10856, at *5 (E.D.Pa.1993) (citing United States v. Hendrix, 549 F.2d 1225, 1229 (9th Cir.1977). In Ortiz the court noted, the fact that a juror may have been asleep during an essential part of the trial, however, does not require the Court

11

to declare a mistrial. Ortiz, at *5; see also United States v. Springfield, 829 F.2d 860, 864 (9th Cir. 1987) ("Every incident of juror misconduct does not require a new trial."). The defendant also must demonstrate that jury misconduct resulted in prejudice that deprived him of his right to a fair trial. See United States v. Clapps, 732 F.2d 1148, 1152 (3d Cir.), cert. denied 469 U.S. 1085 (1984) (where jurors discussed a case prior to closing arguments, defendants had to show "'likelihood of prejudice'" to secure new trial). Thus, a defendant must show that (1) the jury ignored essential portions of the trial and (2) that defendant was prejudiced by jury misconduct. Hendrix, 549 F.2d at 1229. Generally, courts have been reluctant to reverse a conviction or grant a new trial when it has been alleged that jurors have slept during portions of the trial. Springfield, 829 F.2d at 864 (sleeping juror missed testimony that was "insubstantial;" therefore, defendant was not deprived of his right to an impartial jury and a fair trial).

Sheika's general assertion that juror number two slept through portions of the closing arguments is too vague to establish prejudice. See United States v. Tierney, 947 F.2d 845, 868-869 (8th Cir.1991). The Court, therefore, denies the Defendant's Rule 33 motion on this ground.

**C. The Testimony Of Ahmed Souda Was Prejudicial**

The Defendant provides no more than the following blanket

statement: "Issue V - Testimony Of Ahmed Souda That The Defendant Had Committed Other Similar Acts Is So Prejudicial As To Require a Reversal Of The Jury's Decision."  (Sheika's Br. at 8.)  Mr. Souda's testimony proceeded as follows:

> Government: ...who told you how the credit cards were being used?
>
> Souda: Khaled Nijem.
>
> Government: What, if anything, did the defendant say to you at this point?
>
> Souda: Well, that he did it before, and there is nothing to it.
>
> Government: When the defendant told you that he did it before, did what before?
>
> Souda: Credit card fraud. (Tr. 07-29-05 at 21-22.)

The Defendant's argument has no merit.  First, Mr. Souda's testimony was clearly unexpected and it was not solicited from the Government as evidence of prior bad acts.  Additionally, the Defendant did not contemporaneously object to this questioning.  In the Court's "Trial Requirements," counsel is made aware prior to trial of the requirement for contemporaneous objections; a rule followed by the Third Circuit.  See United States v. Colletti, 984 F.2d 1339, 1334 (3d Cir. 1992).  If an objection is not made contemporaneously, it is deemed waived.  Furthermore, the testimony does not fall under Rule 404(b).  Rule 404(b)

states:

> <u>Other Crimes, Wrongs, or Acts</u>.--Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident, provided that upon request by the accused, the prosecution in a criminal case shall provide reasonable notice in advance of trial, or during trial if the court excuses pretrial notice on good cause shown, of the general nature of any such evidence it intends to introduce at trial.

The testimony is not subject to Fed. R. Evid. 404(b) because it is evidence intrinsic to the charged crime of conspiracy and served to explain the genesis of the illegal scheme. <u>See</u> <u>United States v. Alexander</u>, 331 F.3d 116, 125 (D.C. Cir. 2003).

Finally, the parties convened in Chambers to remedy the issue and prevented any potential error by devising a limiting instruction, which was provided to the jury. Jury instruction number 17, "Evidence Of Similar Acts," states:

> There may have been testimony tending to show that the defendant, on another occasion, engaged in conduct that was similar to the conduct charged in the indictment. If you determine that the defendant committed one or more of those other acts as well as the acts charged in the indictment, then you may, but you need not, draw an inference that in doing the acts charged in the indictment, the defendant acted knowingly and wilfully and not because of some mistake, accident or other innocent reason... [or that the acts] were part of a common plan or scheme committed by the defendant.

14

>     Evidence of similar acts may not be
>     considered by you for any other purpose....

Where a court provides clear instructions to the jury, it is presumed that the jury followed those instruction.  See <u>Johnson v. Elk Lake Sch. Dist.</u>, 283 F.3d 138, 148 (2002); <u>United States v. Mari</u>, 47 F.3d 782, 785-86 (6th Cir. 1995); <u>United States v. Stone</u>, 9 F.3d 934, 938 (11th Cir. 1993); <u>Marshall v. Lonberger</u>, 459 U.S. 422, 438 n.6 (1983).  The Court presumes that the jury followed the Court's instructions and finds no basis granting the Defendant's Rule 33 motion on this ground.

**D. The Testimony Of Bank Employees Was Improperly Admitted**

The Defendant argues that "[t]estimony of 'indicia of suspicious activity' should have been excluded.'" (Sheika's Br. at 9.)  The Defendant argues this statement amounted to expert testimony.  The Defendant offers no citations to the record to support his claims and does not so much as identify the witness that made the statement.  He argues "To The [sic] extent that Bank officers testimony was base [sic] on their own perceptions that would be admissible.  However the bank officers went beyond their own perceptions and provided testimony that was based on specialized knowledge because of his experience and training." (<u>Id</u>.)

The Defendant's argument is insufficient and provides no rational basis for a new trial.  The Government did not offer any expert testimony and therefore was not required to comply with

Fed. R. Crim. P. 16(a)(1)(G), which requires the government to provide written summaries of any expert testimony it intends to use.  Opinion testimony of a lay witness is admissible under Rule 701.

The Court finds no miscarriage of justice by the admission of lay witness opinions and denies the Defendant's Rule 33 motion on this ground.

**E. Bank Records Should Have Been Excluded**

Bank records were properly admitted as business records through the certifications of custodians pursuant to Fed. R. Evid. 902(11) (Certified Domestic Records of Regularly Conducted Activity).

Without any explanation or citation to the record, the Defendant asserts that "During the testimony of FBI Special Agent Ed Koby it was discovered that in fact the certifications alleged false facts." (Sheika's Br. at 11.)  What the Defendant is arguing is that the Government introduced only inculpatory records.  What actually happened is set forth in the Government's Brief at page 20:

> Moreover, Special Agent Koby did not, as defendant alleges, request "only those records that were indicative of the guilt of the defendant." See Def. Br. § VII.  In fact, Special Agent Koby clearly explained that for Sheika Crystal the Government possessed and moved into evidence all of the checks issued from defendant's business checking account. See Tr. 8/2/2005 at 47.  On the other hand, the bank records of First Class Limousine

16

>were so voluminous that, although the Government subpoenaed and moved into evidence all the bank statements for that company, the Government only sought copies of approximately 19 checks.  See Tr. 8/2/2005 at 48.

The Defendant has not demonstrated that any government witnesses lied or that the Government withheld exculpatory bank records.

Moreover, the Defendant cross-examined Special Agent Koby on the subject.  If exculpatory records existed (none have been identified), the Defendant could have subpoenaed them himself.

The Defendant's bald assertions cannot support a new trial.

## Conclusion

For the foregoing reasons, the Court **denies** the motions of Gemal Sheika for a judgment of acquittal and for a new trial.  An appropriate order follows.

/s/ William G. Bassler
WILLIAM G. BASSLER, U.S.S.D.J.

Dated:  October 7, 2005

17